JOHN S. WALLACE *et al.*

*v.*

CELIA W. WALLACE.

1. MARRIAGE SETTLEMENT—*construction.* The presumption is, that, in marriage settlements, the parties to the agreement intend to provide for the issue of the marriage, and such construction should be given as to effectuate

that intention, unless it be clearly overcome by the language of the agreement.

2. SAME—*power in, to wife to authorize a sale does not empower her to compel a sale by the trustee.* Where, in contemplation of marriage, the owner of land conveyed it to a trustee in trust for his intended wife during her life, with remainder to the issue of the marriage, if any, and, in case of her death without issue, the land to revert to the grantor, with a further provision in the deed that it should be lawful for the wife to enable the trustee, at any time, to sell or otherwise dispose of the land, it was *held,* that, whilst the wife could authorize the trustee to sell the land, she could not compel a sale thereof, and that no sale could be made without the concurrence of both the *cestui que trust* and the trustee.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. MONROE, BISBEE & BALL, for the appellants.

Mr. JAMES S. MURRAY, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This controversy grows out of the construction that should be given to a deed of marriage settlement. In February, 1865, John S. Wallace, contemplating a marriage with Celia Whipple, made and executed a deed of conveyance of certain real estate, in Chicago, to Henry S. Monroe, on trusts declared in the deed. It was conveyed to him for the sole and separate use of Celia during her natural life, free from the debts, obligations and contracts of any future husband, and, from and after her death, to hold the same for the benefit of any child or children of Celia by the grantor. It also provides for the manner in which the property shall be held and divided between such children and their descendants; and in case of the death of Celia without children, then the property to revert to the grantor.

Had the deed stopped at this, then there would be no question as to the nature and precise character of the estate created. It would have been obvious that it would have been a fee simple vested in the trustee to hold for the sole use of Celia during her natural life, in remainder to the children of the marriage and their descendants, and in the event that no chil-

532 WALLACE *et al. v.* WALLACE. [Sept. T.

Opinion of the Court.

dren had been born, or they or their descendants had not survived their mother, then the fee simple to revert to the grantor, when the life estate should be expended. There was an intention, clearly, first, to make provision for the wife, by settling this property on the trustee for the use of the wife for life, and next, to provide for the issue of the marriage, by limiting the remainder over to them, and in case there should be no issue, then the property, at the death of Celia, to return to the grantor. When the settlement was made and the deed executed, all these estates were contingent; but in equity, and according to the terms of the deed, the life estate became vested when the marriage was consummated, and the contingent remainder became vested when the son, who is still living, was born; nor did the subsequent divorce of the parties in any respect alter or change the rights of any of the parties. We entertain no doubt but the title vested as here indicated, as each event occurred to meet the contingency.

But, after making these provisions and declaring these trusts, the deed confers a power of sale, in these words:

"And it shall be lawful for said Celia, by her separate writing, acknowledged, as in case of an unmarried person, at any time hereafter, to enable the said Monroe, or his successor or successors in trust aforesaid, to sell, convey, mortgage, lease or otherwise incumber or dispose of any part or the whole of the above described premises; * * * and in case of selling, mortgaging, * * * the said trustee or trustees shall pay the purchase money, rents or other moneys into the hands of said Celia, or invest the same in other property, upon like trusts and with like powers, and in all respects as aforesaid, as she shall, in writing, elect or direct."

Independent of this clause, no one, we apprehend, would contend that Wallace, Monroe or Mrs. Wallace, could, separately or jointly, sell and convey the property, and destroy the trust. Hence, all power of sale is conferred by this provision in the deed. Appellee claims that it confers upon her the sole power to direct and compel the trustee to sell and convey, whilst appellants insist that the deed only intended to

confer a power to sell by the joint acts and consent of Mrs. Wallace and the trustee; that neither could act independently of the other, nor could either compel the other to act; that Mrs. Wallace could enable, but could not compel, the trustee to act. These are the positions the parties assume on the argument of the case.

In construing this, as all other written instruments, the intention of the parties executing it must, when ascertained, control in carrying into effect its provisions, and in determining that intention, the instrument must speak for itself. The first object, we have no doubt, from the instrument itself, was, to make provision for Mrs. Wallace during her life, and to settle the property on the issue of the marriage, and in case of her death, without issue of the marriage. the property to return to its original source. This was manifestly the moving object in making the settlement. We can not suppose he designed to give it to her, or he would have peremptorily required the trustee to sell or dispose of it as she might direct, and would have limited the remainder or reversion on the contingency of her dying without having sold or disposed of the property. If such had been his purpose, he would not, we suppose, have created a life estate in her favor. Then the object was to create a life estate as a provision for his wife, with remainder to children.

But whilst this seems to have been the primary and controling motive, he seems to have also intended that, in case of necessity or interest, the property might be sold, and other property substituted, or the money applied as directed in the deed. Hence the power of sale was inserted. It will be observed that the language of the power is, that it may be lawful for the *cestui que trust* to enable the trustee to sell. It is not that she may require or compel him to sell. It is only the conferring an authority for him to do what the deed had failed to authorize. The conferring authority does not imply that it shall be exercised. The law enables persons having the requisite capacity, to sell and convey their real estate, and yet we presume no one would say, because the law enables them

to do so, they are required to exercise the power. The law enables men to perform thousands of acts, yet it does not compel them to perform them. A person may, by letter of attorney, authorize or enable another to sell his lands, but if the price is not fixed, the attorney is not compelled to sell to the first person who may make an offer, but it is his duty to exercise judgment and discretion. He is required to act for the best interest of his principal.

There are a large number and variety of powers conferred that are purely discretionary, and it would be, we apprehend, a new doctrine, to hold that, because a mere naked power was conferred, it must be executed. As a general rule, the creation of a power implies a discretion in the person enabled to act, as to the time and manner of its execution. Otherwise, the donor of the power would himself execute it. Here, the grantor enabled Mrs. Wallace to empower Monroe to sell, but we presume it would not be contended that she should be compelled to exercise the power thus conferred, and thus cut off the remainder to the son. If such was the case, why create a remainder, but simply have provided that Mrs. Wallace should require the trustee to sell, and that he should obey the requirement.

On the contrary, it is apparent that it was the purpose of the grantor to give Mrs. Wallace a discretion to consent to or prevent the trustee from selling the property. And only to enable him to sell when she, in the mode prescribed, should so empower him. The power to sell could only be exercised by the concurrent judgment of Mrs. Wallace and the trustee. Had the grantor intended that the trustee should have full power, the concurrent act of Mrs. Wallace would not have been required, or if it had been intended that Mrs. Wallace should have the sole discretion, then the deed would have been peremptory in requiring him to act on her directions.

It has been held that, in marriage settlements, the presumption is, that the parties to the agreement intended to provide for the issue of the marriage, and such construction should be given as to effectuate that intention, unless it is clearly over-

come by the agreement. See *Jurvis* v. *The Duke of North-umberland,* 1 Jacobs & Walker's R. 539, also, Perry on Trusts, sec. 360, where this rule seems to be recognized.

If, then, the *prima facie* presumption in marriage settle-ments is, that they are made for the benefit of the issue of the marriage, it should require clear language in the deed to over-come the presumption. Here, such a provision was made for the issue, and unless compelled by clear language, Mrs. Wal-lace should not be permitted to defeat the settlement.

On the birth of the son, the contingent remainder vested in him, and it can only be divested by force of the latter clause in the deed, and a fair interpretation of the clause requires the concurrent consent and action of both the mother and the trustee.

We are, therefore, of opinion the court below misconceived the meaning of this deed, and erred in requiring the trustee to sell, and the decree must be reversed, and the cause re-manded with directions to dismiss the bill.

*Decree reversed.*