JAMES B. McCoy *et al.* *v.* ELLA E. FAHRNEY *et al.*
and
JOHN E. McCoy *et al.* *v.* JAMES B. McCoy *et al.*

*Opinion filed October 25, 1899.*

1. CONSTRUCTION—*language of written instrument may be affected by attendant circumstances.* In interpreting a written instrument the language used may be enlarged or limited by the attendant circumstances and the objects the parties evidently had in view.

2. CONTRACTS—*it is presumed that parties to post-nuptial contract intend to provide for issue of the marriage.* The presumption is that the parties to a contract in the nature of a post-nuptial marriage settlement intend to provide for the issue of the marriage, and only clear language in the deed will overcome the presumption.

3. TRUSTS—*language of trust deed construed.* A trust deed in the nature of a post-nuptial settlement, executed to secure a permanent support and maintenance for the use of the grantor's wife and children, and which directs the trustee, upon the death of the wife, to convey lands held by him to "all the children" of the wife, contemplates only the children of the grantor, and does not include issue of the wife by a second marriage.

APPEAL from the Circuit Court of Ogle county; the Hon. JAMES S. BAUME, Judge, presiding.

This was a bill in chancery for partition. The circuit court ruled the complainants in the bill and in the bill of interpleader had no title or interest in the premises involved, and dismissed the original bill and the bill of interpleader. The complainants in the original bill and the bill of interpleader are the children of Elizabeth McCoy, deceased, by her second husband, James B. McCoy, Sr., and the children of deceased children of said Elizabeth McCoy by her said second husband. Said Elizabeth McCoy was formerly the wife of one Samuel Ankeney. Of this former marriage two children were born, namely, Nathaniel A. and Ann Amelia Ankeney. The position of the defendants in the original bill is, the title to the premises in question vested in said children of the first marriage, from whom the defendants (appellees

here) claim by conveyance and descent. The title to the land in suit was in one Nathaniel Swingley, as assignee or trustee of said Samuel Ankeney, the first husband. Whether the children of the second marriage took any interest or title in the premises depends upon the construction of the following instrument:

"This indenture, made January 21, 1834, between Samuel Ankeney, of Washington county, and State of Maryland, of one part, and Nathaniel Swingley, of same county and State, of the other part:

"Whereas, said Samuel Ankeney is indebted to sundry persons by judgment notes and otherwise, and whereas he is desirous of making arrangements to liquidate said debts and to secure a permanent support and maintenance for the use of his wife and children: Now, this indenture witnesseth, that in consideration of the premises and of the sum of five dollars * * * said Samuel Ankeney hath bargained and sold, aliened, enfeoffed and confirmed, and by these presents doth grant * * * unto said Nathaniel Swingley, his heirs and assigns, all the right, interest and estate, both at law and in equity, of him, the said Samuel Ankeney, of, in and to a tract or portion of land situated, lying and being in Washington county aforesaid, of which a certain David Ankeney died seized in fee, and which land was sold to said Samuel Ankeney by a certain Henry Firey on the 27th day of October, 1822, as trustee, by virtue of a decree passed by Washington county court, as a court of equity, on the 29th day of March, 1832, in a cause pending in said court in which Samuel Ankeney and Mary Ankeney were complainants and Henry Ankeney, Sarah Ankeney, Jacob Ankeney and David Ankeney were defendants, which by reference to the proceedings in said cause, which is numbered on the equity docket of said court 352, will more fully and at large appear. Said tract or parcel of land hereby bargained and sold contains two hundred and twenty acres, more or less.

"And the said Samuel Ankeney doth by these presents further grant, bargain and sell unto the said Nathaniel Swingley, his executors, administrators and assigns, the following personal property, to-wit: One negro man, one negro boy, one negro woman and her two children, both girls, three years old and two years old, and one negro girl, three horses, five mares, three mare colts, all the cattle, hogs, sheep, ploughs, harrows and farming utensils, all the household and kitchen furniture, and all the rest and residue of the personal property, goods and chattels, of what nature or kind soever, said Samuel Ankeney now owns and possesses; to have and to hold the said lands and tenements, and the appurtenances thereunto belonging or in anywise appertaining, and also the above mentioned negroes, cattle or other goods and chattels, unto said Nathaniel Swingley, his heirs, executors and administrators, to and for the uses, trust and purposes following, and to and for no other use, intent or purpose whatsoever, that is to say, in trust; that the said Nathaniel Swingley shall sell and dispose of, at public or private sale, for cash or on credit, as in the judgment of said Nathaniel Swingley may be most expedient, all the aforesaid lands and tenements and all the aforesaid negroes, cattle, goods and chattels, except such portion of said negroes, goods and chattels as the said Nathaniel Swingley may think proper to retain for the use of said Elizabeth Ankeney during her lifetime, and convey the said lands and tenements by good and sufficient deed or deeds, and deliver possession of said negroes, goods and chattels to the respective purchasers of said lands, negroes, goods and chattels, and the proceeds of the said sales to apply first to the payment of all judgments which at this time may be obtained against the said Samuel Ankeney; secondly, to pay and satisfy all just debts at this time due or owing to any person or persons by said Samuel Ankeney, and all costs;  *  *  * and lastly, (after fulfilling and satisfying the aforesaid

trust,) to apply the surplus of the proceeds of the sales of said lands, negroes and goods and chattels as follows, that is to say:

"The said Nathaniel Swingley shall, in his discretion, either invest said surplus proceeds in bank stock or other stock, or loan the same to such person or persons or body corporate or politic as he may think proper, or purchase lands with said surplus proceeds either in the State of Maryland or in any other State or territory of the United States, as he may think most advantageous to the parties concerned. And if the said Nathaniel Swingley shall purchase lands with said surplus proceeds, he and his heirs shall hold the same in trust as follows, that is to say: He shall pay over the annual proceeds of such lands to Elizabeth Ankeney, wife of said Samuel Ankeney, and for her sole and separate use and benefit for and during the time of her natural life, and after her decease the said Nathaniel Swingley, or his heirs, shall convey the said lands so purchased with the said surplus proceeds, to all the children of the said Elizabeth Ankeney or the heirs-at-law of such of said children as may die leaving heirs before the death of said Elizabeth, the heirs of said children to have conveyed to them such portion of said lands as their ancestors would be entitled to if living. And in the event of the said Elizabeth Ankeney dying without leaving any child or children living at the time of her decease, or any descendant or descendants of any child or children, then the said land shall be conveyed to or held and enjoyed by the next of kin of the said Elizabeth. And in case said Nathaniel Swingley shall invest the surplus proceeds of said sale of said lands, negroes, goods and chattels in stock of any kind, or loan the same to any person or persons or any body corporate or politic, then the said Nathaniel Swingley, his heirs or executors, shall pay over annually to the said Elizabeth Ankeney, for and during the term of her natural life and for her sole and separate use, the dividends or

interest which may annually arise on such investment or loans; and on the death of said Elizabeth leaving a child or children or descendant of a child or children, then the said Nathaniel Swingley, his heirs or executors, shall transfer and deliver to such child, children or descendants of such child or children, the stock or principal which may be loaned or invested in manner aforesaid; and in the event of no child or children or descendant of such child or children living at the death of said Elizabeth, then the said stock or money loaned or invested as aforesaid shall be transferred to or held and enjoyed by the next of kin of the said Elizabeth. It is further agreed that said Nathaniel Swingley is not to receive any compensation for the execution of this trust.

"In witness whereof the said Samuel Ankeney and Elizabeth Ankeney, his wife, have hereunto subscribed their names and affixed their seals, the day and year first hereinbefore written.

SAMUEL ANKENEY,    [Seal.]
ELIZABETH ANKENEY.  [Seal.]"

JAMES W. ALLABEN, and REUBEN C. BASSETT, for appellants.

J. C. SEYSTER, WILLIAM MARSHALL, and CYRUS HEREN, for appellees.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The end to be attained by the interpretation or construction of the instrument is to ascertain the intention with which it was executed. That intention is declared in the premises of the deed to be to arrange to liquidate the debts of the said Samuel Ankeney "and to secure a permanent support and maintenance for the use of his wife and children." One of the purposes of the premises of the deed is to set forth the recitals which may be necessary to an explanation of the deed and its operation and the reason for executing it. (Black's Law Dic.;

Anderson's Law Dic.; 5 Am. & Eng. Ency. of Law, 454.)
Tested by this declaration of intention, the object of the
grantor is unmistakable. His purpose was to devote the
property affected by the deed, remaining after payment
of his indebtedness, to the benefit of his wife and his
children. Nor do we think this declared purpose is to
be overcome by the subsequent requirement that upon
the death of the said wife of the said grantor the trustee
shall convey any lands held by him under the terms of the
trust to "all the children of the said wife of the grantor."
The true intent is to be gathered from the whole instru-
ment, the separate parts being viewed in the light of the
other parts. (*Stout* v. *Whitney*, 12 Ill. 218.) Inconsistencies
are to be reconciled, if possible. A narrow and unreason-
able construction, and which would work a result differ-
ent from that manifestly intended, should not be adopted.
(*Dunlap* v. *Chicago, Milwaukee and St. Paul Railway Co.* 151
Ill. 409.) "The language used may be enlarged or limited
by the attendant circumstances and the objects had in
view, and more regard is due to the real intention of the
parties than to some particular word that may have been
used in the expression of that intention." (*Chicago, Mad-
ison and Northern Railroad Co.* v. *National Elevator Co.* 153
Ill. 70.) "The experience of human affairs teaches courts
that this intention is not to be sought merely in the ap-
parent meaning of the language used, but this language
may be enlarged or limited by reference to the circum-
stances surrounding the parties and the objects they evi-
dently had in view." (*Robinson* v. *Stow*, 39 Ill. 568.) The
same principle is announced in *Street* v. *Chicago Wharfing
Co.* 157 Ill. 605. "Particular expressions will not control
where the whole tenor or purpose of the instrument for-
bids a literal interpretation of the specific words." (*Up-
dike* v. *Tompkins*, 100 Ill. 406.) "A rigid adherence to the
letter often leads to erroneous results and misinterprets
the meaning of the parties. Inconsistent clauses must
be construed according to the subject matter and the

182—5

motive, and the intention of the parties, as gathered from the whole instrument, must prevail over the strictness of the letter." (Beach on Modern Law of Contracts, sec. 708.) "Where two clauses, apparently repugnant, may be reconciled by any reasonable construction, or by regarding one as the qualification of the other, that construction must be given, because it cannot be assumed that the parties intended to insert inconsistent provisions." (Beach, sec. 718.) A written contract should be read as a whole. All its provisions are to be considered, and the general design must not be frustrated by allowing too much force to single words or clauses." (Beach, sec. 711.)

The instrument under consideration is in the nature of a post-nuptial marriage contract or settlement. In marriage settlements it is the presumption the parties thereto intend to provide for the issue of the marriage, and clear language in the deed is necessary to overcome this presumption. (*Wallace* v. *Wallace*, 82 Ill. 530.) In *Johnson* v. *Webber*, 65 Conn. 501, a bequest to a grand-daughter, and in case such grand-daughter should die leaving a husband surviving such husband should take the bequest, was construed to apply only to the then husband of the grand-daughter, and not to a second husband, on the ground the manifest intent of the testator, gathered from the entire will, could not be overcome by the particular words employed.

In *Elliott* v. *Elliott*, 117 Ind. 380, a devise of real estate to one designated in the will as the wife of the testator, though he had a former living wife from whom he had not been divorced, "with power to dispose of the same as she (the wife named in the will) may think best for herself and my children," and a bequest of personal property to the wife, "to have and use as she may think best and proper for herself and my children, provided that in case my beloved wife, Mary Ann Elliott, should marry after my decease, then and in that case it is my will that two-thirds of all my property, both real and

personal, shall descend in equal portions to my children,"
were held to be a devise and bequest to the children of
the testator born of the person named in the will as his
wife, to the exclusion of other children born to the tes-
tator by his lawful wife. The ground of the decision
was, that though, ordinarily, when a man speaks of his
children he is understood to mean his legitimate chil-
dren, it was plain from the context of the will, taken as
a whole, and the situation and circumstances of the fam-
ily and property of the testator, he did not mean by the
words "his children" to refer to his children born of his
lawful wife. The intent of the testator was enforced in
*Gelston* v. *Shields*, 78 N. Y. 205, though against the literal
language of the will, the words "my children" being held
to refer to children by the person named in his will as
his wife, and not to include children born of a former
wife. In *Thomas* v. *Crosby*, (Mass.) 51 N. E. Rep. 6, a trust
deed executed by a husband and father was declared to
be a family settlement, and the words "children" of the
grantor were, in view of the manifest intent which ani-
mated the grantor, held to refer, not to all his children,
but only to such as were born to him of his then living
wife and to the exclusion of those born to the grantor
by another wife.

Applying these rules of interpretation, we hold the
trust deed under consideration was executed for the bene-
fit of the then living children of said Samuel Ankeney
born of his then wife and such other children as should
thereafter be born to them, and that the provision of the
deed that upon the death of his said wife all of her chil-
dren should share in the property affected by the trust
deed, meant all of her children born to him. The wife,
subsequently to the execution of the deed, obtained a di-
vorce from the grantor and became the wife of one James
B. McCoy, Sr.. Children born to the wife by the second
husband, though included within the literal meaning of
the words "all her children," were clearly not intended to

be included within the meaning of the word "all" as employed by the maker of the instrument. The word "all" must, in view of the manifest intention of the grantor, be so limited in meaning as to refer only to all of the class of children intended to be benefited by the instrument.

The chancellor correctly decreed the bill and the bill of interpleader should be dismissed, and that decree is affirmed.
                                                  *Decree affirmed.*

Mr. CHIEF JUSTICE CARTWRIGHT took no part in the decision of this case.