# MIDWEST–RADIANT CORPORATION v. HENTZE.

No. 9413.

United States Court of Appeals Seventh Circuit.

Nov. 30, 1948.

Henry Driemeyer, of East St. Louis, Ill., Frederick E. Merrills, of Belleville, Ill., Harold L. Reeve and Elmer M. Leesman, both of Chicago, Ill., and Isaac C. Orr and Laura Andreas, both of St. Louis, Mo., for appellant.

Sam S. Pessin, of Belleville, Ill., David F. Root and Leonard Hoffman, both of Morris, Ill., and Preston K. Johnson, Sr., and Preston K. Johnson, Jr., both of Belleville, Ill., for appellees.

Before KERNER and MINTON, Circuit Judges, and BRIGGLE, District Judge.

KERNER, Circuit Judge.

Plaintiff instituted this action for a declaratory judgment pursuant to § 274d(1) of the Judicial Code 28 U.S.C.A. §§ 2201, 2202. Federal jurisdiction is founded upon diversity of citizenship and the requisite amount in controversy. Plaintiff sought a decree that defendant Northern Illinois Coal Corporation (hereinafter referred to as Northern) had no right, title or interest to the coal underlying certain real estate in St. Clair County, Illinois, and that a certain lease entered into by and between the Hentze defendants and plaintiff was a valid and subsisting agreement.

The controlling facts are not in dispute. On March 20, 1902 Augusta Keim was in possession of and owned an eighty-acre farm near Lenzburg, Illinois. On that day she executed an instrument,[1] which was recorded in the office of the Recorder of Deeds of St. Clair County, Illinois. The instrument recited that Thomas, the person named in the instrument as grantee, was to "have the sole right to mine and produce and to enter upon said land, sink shafts · * * * and erect any and all structures necessary for said purposes of mining and producing coal"; that he was

---

[1] "The Grantors, Augusta Keim, a widow, * * * for and in consideration of one Dollar, the receipt of which is hereby acknowledged and the further consideration to be paid as royalty as follows: One and one-half cent per ton, mine run, for each and every ton of coal mined * * * or produced from the real-estate hereinafter described, convey and quitclaim to D. D. Thomas or his successors or assigns of Kansas City, Mo., all the grantor's interest in and to the coal * * * lying and being under the surface of the tracts and parcels of land described as follows, to-wit [describing real estate] * '* *.

"The conditions of this agreement are that the said grantee, their successors or assigns shall have the sole right to mine and produce and to enter upon said land, sink shafts, maintain dumps, construct and use, railroad tracks and erect any and all structures necessary for said purposes of mining and producing coal * * * from said premises and when so mined or produced to pay to said Grantors their heirs or assigns, the royalty above specified on or before the 15th day of each month * * *.

"It is agreed that said Grantors hereby release their right under and by virtue of the homestead exemption laws of the State of Illinois to the coal * * * aforesaid.

"Witness our hands and seals this 20 day of March, 1902.

"Grantee to commence sinking a mine at Lenzburg in six months from this date and have same in operation in one year from that date or this deed is to be void.

"Augusta Keim (Seal)"

to pay as royalty "One and one-half cents per ton, mine run, for each and every ton of coal mined"; and that he was "to commence sinking a mine at Lenzburg in six months * * * and have same in operation in one year from that date or this deed is to be void."

On May 7, 1902 Thomas obtained from one Prediger a bond for deed for a tract of land about one-half of a mile north of the Keim farm, the condition of which was that Thomas was to sink a coal shaft. During the summer of 1902 Thomas did commence sinking a coal shaft on the Prediger land but the mine was not placed in operation, and was abandoned during the latter part of 1902 or early in 1903, before coal was reached, and Thomas did not at any time after March 20, 1902 begin or sink any other mine at Lenzburg or in the vicinity thereof. No mine was ever sunk upon the land described in the Keim-Thomas instrument, no coal was ever mined or removed from the land, and Thomas never entered upon or took possession of the coal thereunder, or made any payment of royalty to Keim or anyone claiming under her.

Augusta Keim was in possession of her farm after the execution of the Keim-Thomas instrument until July 16, 1909, when she conveyed it by warranty deed to Ernest W. Hentze, predecessor in title of defendant John W. Hentze. The deed to Ernest W. Hentze contained no reservation or exception to any coal that might be underlying the real estate, but warranted the title to the entire fee. Ernest W. Hentze took possession of the farm, and this farm since that time has at all times been in the exclusive possession of members of the Hentze family.

On October 5, 1944 John W. Hentze, owner of the real estate, as lessor, entered into a mining lease with plaintiff, as lessee, whereby Hentze leased his farm to plaintiff for a term of thirty years for the purpose of mining coal. On November 27, 1944, more than forty years after the execution of the Keim-Thomas instrument, Northern procured from Thomas a quitclaim deed of the interest he had acquired by the Keim instrument.

The trial judge was of the opinion that the Keim-Thomas instrument possessed "all the requisites of a quitclaim deed" and "was effective to convey the interest owned by the grantor in the property described therein." He also held that the provision that the grantee should commence sinking a mine at Lenzburg within six months and have the same in operation within one year thereafter or the deed would become void, was a condition subsequent, and that if the Keim-Thomas instrument was to be regarded as a quitclaim deed instead of an agreement in the nature of a mining lease, it should be regarded as a deed upon condition subsequent; that Thomas did not lose his estate under the deed merely by nonfulfillment of the condition subsequent or by reason of abandonment, and that Thomas' estate remained vested in him at the time he gave the quitclaim deed to Northern. He entered a judgment that John W. Hentze was the owner of the real estate; that Northern was the owner of the coal underlying the land; and that the lease agreement between plaintiff and the Hentzes was void and of no effect. To reverse the decree, plaintiff appealed.

The all important question is the interpretation to be put upon the Keim-Thomas instrument, that is, the problem is one of construction.

Appellant contends that by the instrument Mrs. Keim did not intend to vest title to her coal in Thomas until he placed a mine in operation; that it was the duty of the court to give effect to the intention of the parties as manifested by the instrument in its entirety, interpret it in the light of the situation of the parties, consider the objects which they sought to attain, and give the instrument the practical construction which they themselves placed on it; that the instrument should be construed as a mining lease which was terminated by abandonment, and that when so construed, the instrument accomplished for both parties what their interests required, with no undue advantage to one or harsh disadvantage to the other; that in any event this court should not hold that the instrument created a technical common law estate

upon condition subsequent; and that even if it be assumed that it was a grant, still the abandonment clause should be given effect.

On the other hand, Northern, the only appellee in this appeal, argues that the words of conveyance in the instrument were "convey and quit-claim," hence it contained all of the requisites to constitute a valid conveyance of real estate as prescribed by Ill.Rev.Stat. c. 30, § 9 (1947); that the words were sufficient to convey title; that such an instrument has been held to be sufficient to convey the property described therein; that the court properly determined the instrument to be a quitclaim deed conveying a fee simple estate in the coal to Thomas, and that Thomas could not be divested by non-user or abandonment.

■ To be sure, the general rule under the Illinois statute is, that the words "convey and quit-claim" are sufficient to convey title, but where an instrument even in statutory form contains no words of inheritance, it must be construed as a whole, Tallman v. Eastern Illinois & P. R. R. Co., 379 Ill. 441, 444, 41 N.E.2d 537, and since the object of construction of deeds is to ascertain the intention which the maker of an instrument has expressed, a deed will, if possible, be construed so as to give effect to the intention of the parties as gathered from a consideration of the whole instrument. Walker v. Illinois Cent. R. Co., 215 Ill. 610, 618, 74 N.E. 812; Bear v. Millikin Trust Co., 336 Ill. 366, 388, 168 N. E. 349, 73 A.L.R. 173; Kinder v. La Salle County Carbon Coal Co., 310 Ill. 126, 132, 141 N.E. 537; Texas Co. v. O'Meara, 377 Ill. 144, 150, 36 N.E.2d 256; Tallman v. Eastern Illinois & P. R. R. Co., supra; In re Chicago & N. W. Ry. Co., 7 Cir., 127 F.2d 1001; and Shadden v. Zimmerlee, 401 Ill. 118, 81 N.E.2d 477. In ascertaining the intention courts are not confined to a strict construction of the language used. The court should look to the circumstances attending the transaction, the situation of the parties, the state of the thing granted and the object to be attained, Goodwillie Co. v. Commonwealth Electric Co., 241 Ill. 42, 72, 89 N.E. 272; Adams v. Gordon, 265 Ill. 87, 91, 106 N.E. 517; and Law v. Kane, 384 Ill. 591, 52 N.E.2d 212, and, if necessary, put itself in the place of the parties, read the instrument in the light of the circumstances surrounding them at the time it was executed, and give consideration to the practical construction which the parties themselves placed on the instrument, Storey v. Storey, 125 Ill. 608, 613, 18 N.E. 329, 1 L.R.A. 320, 8 Am.St.Rep. 417; Wright v. Loring, 351 Ill. 584, 589, 184 N.E. 865; Henry v. Metz, 382 Ill. 297, 300–303, 46 N.E.2d 945; and Law v. Kane, supra, 384 Ill. 596, 52 N.E.2d 212, and an unreasonable construction which would work a result different from that intended, should not be adopted, McCoy v. Fahrney, 182 Ill. 60, 65, 55 N.E. 61.

■ The precise question—whether an instrument identical with or similar to the Keim-Thomas instrument and executed under similar circumstances is a deed or merely a lease, or whether, if construed as a grant, it is to be held one on condition precedent or one on condition subsequent —so far as we have been able to learn, has never been passed upon by the Illinois courts. We are therefore not precluded from deciding the case before us on sound principles and precedents. Vandenbark v. Busiek, 7 Cir., 126 F.2d 893.

Appellant makes the point that an abandonment clause such as that contained in the Keim-Thomas instrument is a valid provision, to which the law will give effect, irrespective of whether it is contained in a mining grant or a lease. The trial judge, as we have already observed, held that because the instrument contained the words "convey and quit-claim" it was necessary to classify it as a "grant" rather than a "mining lease." It was upon this premise that he concluded that the rights and interests arising thereunder could not as a matter of law be abandoned by Thomas.

There are cases holding that an abandonment clause may be validly incorporated in a mining grant. The case of Paine v. Griffiths, 3 Cir., 86 F. 452, involved an instrument which the court interpreted to be a grant. The instrument had a clause which expressly authorized the grantees to abandon the mining operations. The court,

after pointing out that it was unimportant whether the instrument was a grant, or merely a lease, 86 F. at page 454, said:

"It seems clear however, that the interest transferred was a grant of the minerals; not absolute, but conditional. The grantees were expressly authorized to abandon the property and thus terminate their obligations, as well as their interest. The provision was not inserted for their benefit alone, but as well for the grantor's. This is too manifest to justify discussion. His object was the development and utilization of his land. If therefore the grantees abandoned the property the grantor was to be remitted to his former condition."

And the court held that since the grantees had done nothing under the instrument for a period of more than twenty years, the law would pronounce their conduct to be an abandonment.

Thomason v. Ham, 113 Tex. 239, 254 S.W. 316, also involved a grant of coal and mineral rights, with an express abandonment clause. The court held 254 S.W. at page 317, that the grant could not endure after the grantees voluntarily relinquished the grant by abandonment. See also Payne v. Neuval, 155 Cal. 46, 99 P. 476.

We now pause for a moment to consider briefly whether the purpose and intention of the parties would be more accurately served and their practical construction effectuated if the instrument is treated as one creating an estate on condition precedent rather than one on condition subsequent.

In Illinois, no technical or precise words are used to distinguish a condition precedent from a condition subsequent. The same words may create either, Nowak v. Dombrowski, 267 Ill. 103, 107 N.E. 807, and the question of whether a conveyance is one on condition precedent or condition subsequent depends entirely upon the intention of the parties, Maguire v. City of Macomb, 293 Ill. 441, 448, 127 N.E. 682. Whether a condition is one or the other is a matter of construction, to be solved by ascertaining the intention of the parties creating the estate. It is not determined merely by the structure of the instrument, or the arrangement of the covenants, Southern Surety Co. v. MacMillan Co., 10 Cir., 58 F.2d 541, 547. The application of the principle enunciated in the Maguire case is illustrated by what was said in Spiller v. McGehee, Tex.Civ.App., 68 S.W.2d 1093, 1096. In that case the defendants (grantors in the deed being construed) insisted that the expression "work to begin within 12 months" must be rejected because "it is a condition or stipulation inconsistent with and destructive of the granting clause, and hence cannot be considered in the construction of the deed." The court, in disposing of the contention there made, 68 S.W.2d at page 1096, said: "The purpose of the conveyance being the development of the lands for the minerals mentioned, it was not only proper but necessary for some stipulation to be made as to when such operations for development should be begun and conducted." And the court held that when the instrument was considered as a whole, the provision "work to begin within 12 months" was not in any wise inconsistent or contrary to the granting clause of the deed; rather it was entirely in agreement with and a necessary part of the deed to express the purpose and intent of the grantor in the execution of the deed.

In Eastern Kentucky Mineral & Timber Co. v. Swann-Day Lumber Co., 148 Ky. 82, 146 S.W. 438, 46 L.R.A.,N.S., 672, one Spencer, in 1874, signed and acknowledged an instrument which the court said it would, for convenience, call a "deed," in which Spencer recited that for a stated consideration of $1.00 he did "grant, bargain, sell and convey" to one Howard and others, seven-eighths of the minerals and timber in certain real estate. Fourteen years later Spencer's heirs conveyed a fee simple title to the real estate to the remote vendors of defendant in the case. Niether the grantees in the 1874 deed from Spencer nor their grantees ever entered upon or developed the property, but thirty year later they began an action for an accounting against defendant, who had begun to cut timber in 1902. The question was whether a fee simple interest in the minerals and timber passed to the grantee in the 1874 deed, or merely the right to mine

and remove the minerals and timber on condition that the right be exercised within a reasonable time. The court held that the latter was the case, and that when Spencer's grantee entirely and wholly failed to develop the land for thirty years, he must be deemed to have abandoned his rights as a matter of law. See also Kentucky Rock Asphalt Co. v. Milliner, 234 Ky. 217, 27 S.W.2d 937; Tennessee Oil Gas & Mineral Co. v. Brown, 6 Cir., 131 F. 696; and Crain v. Pure Oil Co., 10 Cir., 25 F.2d 824.

It is clear from this record that insofar as Thomas' relation with Mrs. Keim was concerned, Thomas construed the instrument as a mere prospective arrangement whereby he had the right to absolve himself from all obligations to her by electing not to go ahead with placing a mine in operation at Lenzburg before March 20, 1903; that as a result of his election the instrument was rendered void and consequently he was released from all obligations thereunder. Mrs. Keim and her successors in title acquiesced in this construction and not only acted thereon, but changed their position in reliance upon Thomas' interpretation of the instrument as one which he could nullify under the abandonment clause, and both of them treated the instrument as having become void upon Thomas' abandoning in 1903 the shaft he had sunk on the Prediger land. Mrs. Keim never asserted against Thomas any right predicated upon the instrument, and Thomas went his way for over forty years as if the instrument had never been executed.

We believe that the rules discussed are the rules which govern the construction of the Keim-Thomas instrument. We have studied the many cases cited by the parties and we have been unable to glean any intimation in any of the Illinois cases that the Illinois courts would not, in the event the question came before them for decision, follow the decisions of courts of other jurisdictions, which have refused, in construing an instrument such as ours, to give the instrument such a construction as would not carry out the manifest intention of the parties. In our opinion, when we place ourselves in the place of the parties and read the instrument in the light of the circumstances concerning the parties at the time the instrument was executed, consider the objects they sought to attain and weigh the practical construction which they themselves placed on the instrument, whether we construe the instrument as a mining lease or a grant, we are impelled to hold that the instrument created an estate on condition precedent and that that estate was terminated by abandonment. And since we are of the opinion that whatever estate Thomas had, has been terminated, it follows that Northern has no right, title or interest in the coal underlying the real estate described in the Keim-Thomas instrument.

In reaching this conclusion we have not overlooked the cases cited by appellee. We shall not discuss all of them. In Manning v. Frazier, 96 Ill. 279, the question was whether a vendor's lien attached to unmined coal in place of the purchase price of coal that had been mined and removed. The deed did not contain any provision comparable to the abandonment clause in the Keim-Thomas instrument, nor did the court decide any question as to the character of the estate conveyed.

In the Uphoff v. Trustees of Tufts College, 351 Ill. 146, 184 N.E. 213, 93 A.L.R. 1224, and Jilek v. Chicago, W. & F. Coal Co., 382 Ill. 241, 47 N.E.2d 96, 146 A.L.R. 871, cases, there were absolute and present conveyances by warranty deeds of the mineral estates, completely closed at the time of the transactions, without conditions, and based on a present consideration, and the court in those cases followed the general rule that where there has been an absolute and unconditional conveyance, in praesenti, of the mineral estate underlying lands, mere nonuser or abandonment by the grantee is not sufficient in and of itself to defeat or terminate the mineral estate. We agree, but such is not our case.

The judgment of the District Court is reversed and the cause remanded to that court for further proceedings in conformity with this opinion.

Reversed and remanded.