(February 2, 1906.)

## BECKSTEAD v. GRIFFITH.

### [83 Pac. 764.]

FARM LABORERS' LIEN—SUFFICIENCY OF DESCRIPTION—DEMURRER OVERRULED WHEN—OFFICER JUSTIFYING LEVY OF ATTACHMENT MUST ALLEGE JURISDICTIONAL FACTS—WHAT ARE JURISDICTIONAL FACTS.

1. Anyone performing labor or rendering service in the production of a crop may have a lien for his labor and services on the entire crop produced.

2. A description in the lien that it is intended to cover the entire crop of hay produced for the year is not void for uncertainty.

3. A complaint that alleges that plaintiff and his assignors performed labor and rendered services in the production of seven stacks of hay on a ranch, describing it, is not subject to a general demurrer that the complaint ''does not state facts sufficient to constitute a cause of action,'' even though the lien includes other hay raised on the same premises and harvested and stacked by others under a different contract.

4. An officer to justify his seizure by virtue of a writ of attachment and his possession thereunder must allege all the jurisdictional facts by which he justifies his right of possession.

(Syllabus by the court.)

APPEAL from the District Court of Bannock County. Honorable J. M. Stevens, Judge.

Judgment for plaintiff. Defendant Griffith appeals. Judgment affirmed.

The facts are stated in the opinion.

S. C. Winters, for Appellant, cites no authorities on the points decided.

Standrod & Terrell, for Respondent Beckstead.

It would seem that where an officer attempted to justify under his writ, he must not only show propriety in a third person, but he must connect himself with the title. (*Lewis v. Birdsey,* 19 Or. 164, 26 Pac. 623; *Guille v. Wong Fook,* 13 Or. 577, 11 Pac. 277; *Coos Bay etc. Co. v. Siglin,* 26 Or. 387, 38 Pac. 192; *Bruce v. Foley,* 18 Wash. 96, 50 Pac. 935; *Pico v. Kalisher,* 55 Cal. 153.) It is well settled that an officer, in order to justify the seizure of property in the possession of a stranger to the writ which he has executed, must especially plead such justification. (*Fisher v. Kelly,* 30 Or. 1, 46 Pac. 146-148; *Thornburg v. Hand,* 7 Cal. 554; *Newton v. Brown,* 2 Utah, 126; *Trowbridge v. Bullard,* 81 Mich. 451, 45 N. W. 1013; *Glazer v. Clift,* 10 Cal. 303; *Howard v. Manderfield,* 31 Minn. 337, 17 N. W. 946; *Richardson v. Smith,* 29 Cal. 529; *Barley v. Cannon,* 17 Mo. 595; *Tronson v. Union Lumber Co.,* 38 Wis. 202.) The rule of the common law that statutes in derogation thereof are to be strictly construed has no application to the codes of this state. (Rev. Stats. 1887, sec. 4; 1 Annotated Codes, sec. 5; *Darby v. Heagerty,* 2 Idaho, 282, 13 Pac. 85; *Flood v. McClure,* 3 Idaho, 587, 32 Pac. 255; *Guynn v. McDonald,* 4 Idaho, 605, 95 Am. St. Rep. 158, 43 Pac. 74.) "Notwithstanding the laborer's lien was unknown to the common law and is purely a creature of the statute, in view of its equitable character, we think the statute giving it should be liberally construed so as to advance its object." (*Barnard v. McKinzie,* 4 Colo. 252; *Williams v. Uncompahgre Canal Co.,* 13 Colo. 469, 22 Pac. 806; *Cannon v. Williams,* 14 Colo. 21, 23 Pac. 456; *Empire etc. Canal Co. v. Engley,* 18 Colo. 388, 33 Pac. 153; *Small v. Foley,* 8 Colo. App. 435, 47 Pac. 64.) In support of our contention that the reasonable value of the work and labor performed is gathered from the facts alleged and not the mere use of the words of the statute, we call attention to *Whittier v. Logus,* 13 Or. 546, 11 Pac. 305-309. "The rule is that if there appear enough in the description

to enable a party familiar with the locality to identify the property intended to be described with reasonable certainty, to the exclusion of others, it will be sufficient." (*Blanshard v. Schwartz*, 7 Okla. 23, 54 Pac. 303-305; *Seaton v. Hixon*, 35 Kan. 663, 12 Pac. 22; *McClintock v. Rush*, 63 Pa. St. 203; *Parker v. Bell*, 7 Gray, 429; *Caldwell v. Asbury*, 29 Ind. 451; *Kansas City Hotel v. Sauer*, 65 Mo. 279; 15 Am. & Eng. Ency. of Law, 144.)

STOCKSLAGER, C. J.—This is an action commenced for the purpose of foreclosing certain farm laborers' liens filed upon a crop of hay. Defendant Griffith filed a general demurrer to the complaint, which was overruled. He then answered and the facts were stipulated. The other defendants defaulted. The facts as stated by counsel for appellant, and conceded in the main to be correct by counsel for respondent, are that one T. F. Scott leased a ranch of about sixteen hundred acres from H. O. Harkness; that said T. F. Scott subleased the same to one William F. Scott, his son, and was to receive one-half of the hay raised upon said ranch in the stack for his rental. In the year 1904 said sublessee, William F. Scott, commenced to harvest and put up the hay by hiring men and teams to assist him; this work commenced the latter part of June or the 1st of July, 1904, and ended on or about the seventh day of September, 1904, when about seven stacks of hay had been cut and stacked on the premises; that on or about the seventh day of September, 1904, the said William F. Scott let a contract to one W. F. Hardwick to put up and harvest the remainder of the hay, which turned out to be about fourteen stacks, and that was also stacked upon the premises in different parts of the ranch the same as that put up by Scott; that all of the said liens were filed for record about the time Hardwick completed his contract for harvesting and putting up said hay. The whole ranch is strictly a hay ranch, and nothing else is attempted to be raised thereon in the way of agricultural products. It is shown by the complaint that defendant Griffith was at the time of the commencement of the action, and prior thereto,

the sheriff of Bannock county. By reason of the fact that he had served an attachment on all or some of the property in dispute as such sheriff, seems to be the reason for making him a defendant. The complaint alleges that an undivided one-half interest of the hay belongs to W. F. Scott, subject to the liens of plaintiff, and his assignors, and to the lien of other claimants for like services as' were performed by plaintiff and his assignors. Exhibits "A" to "J," inclusive, purport to be liens for labor and services rendered Scott, all of which were filed and recorded and assigned to plaintiff before commencing the action.

Defendant Griffith demurred to the complaint on the ground that it does not state facts sufficient to constitute a cause of action. The demurrer was overruled. He then answered, putting in issue the material allegations of the complaint, and justifying his possession of the property by virtue of a writ of attachment issued by the district court of Bannock county, and placed in his hands as sheriff of Bannock county, and levied upon the property in dispute, as the property of William Scott. The other defendants defaulted. The facts are stipulated as follows:

"For the purpose of avoiding the costs of procuring evidence, and for the mutual convenience of the parties, it is hereby stipulated by and between Standrod & Terrell, as attorneys for the plaintiff, and S. C. Winters, as attorney for the defendant, George Griffith, as sheriff of Bannock county, as follows:

"1. That all of the allegations of each of the causes of action stated in the plaintiff's complaint are true, except the allegation as to a reasonable attorney's fee, and it is hereby agreed that if the plaintiff is entitled to recover in this action that the sum of one hundred dollars is a reasonable attorney's fee and may be allowed to the plaintiff for the prosecution of said action.

"2. It is further agreed that on or about the thirtieth day of August, 1904, the defendant, George Griffith, as sheriff of Bannock county, received a writ of attachment issued out of

the above-entitled district court, and that upon said writ of attachment he made the following return, to wit:

" 'I hereby certify that I received the within writ of attachment on the twenty-ninth day of August, 1904, and served the same on the thirtieth day of August, 1904, by levying, attaching and taking into my possession the following described personal property belonging to the defendant, W. F. Scott, to wit: An undivided one-half interest in and to ten stacks of hay; one mountain spring wagon; two bull rakes; one Copper wagon and box; one hay rack; an undivided half interest in and to all growing crops, pasture and pasture rights. All the above property is on the ranch known as the Catherine Harkness ranch near the town of Oxford, Bannock county, Idaho, now operated and controlled by the defendant, W. F. Scott. (Signed) George Griffith, Sheriff, by Wm. H. Edgley, Deputy.'

"3. That the said ranch known as the Catherine Harkness ranch is a hay ranch, and a crop of hay grew thereon during the year and season of 1904, of which crop of hay about seven or eight stacks of hay had been cut, harvested and stacked when the said sheriff made or attempted to make his said levy thereon, and the whole of remainder of said crop was then standing in the field, uncut and unstacked, and which was afterward cut and stacked by one W. F. Hardwick, under a contract thereafter made with W. F. Scott; that said Hardwick thereafter cut, stacked and harvested the remainder of said crop of hay, which amounted to about twelve or fourteen additional stacks of hay; that the work, labor and assistance rendered and performed by the plaintiff's several assignors was rendered and performed in the cutting and harvesting of the seven or eight stacks of hay of said crop cut and harvested prior to the seventh day of September, 1904, that being the date when said Hardwick began work under his said contract.

"It is further agreed that the whole of the eight hundred tons of hay, stacked in about twenty-one stacks, mentioned in the plaintiff's complaint, and the respective exhibits thereto, is one crop of hay grown upon the ranch above mentioned during the year 1904, and the only crop cut, harvested or

grown upon said ranch during said year, the said eight hundred tons stacked in about twenty-one stacks, being the whole of said crop of hay harvested and grown upon said ranch during the year 1904, and the only crop of any kind that was grown or harvested thereon or therefrom during said year; that said ranch contains about sixteen hundred acres inclosed by one fence and all planted to hay; that said hay raised upon said ranch is produced without irrigation but is watered by seepage, and no labor is required to irrigate same."

## "AMENDED STIPULATION.

"For the purpose of making clear facts intended to be covered by the original stipulation on file herein, and as supplemental thereto, it is hereby stipulated and agreed by and between counsel for the plaintiff and counsel for the defendant, George Griffith, as follows:

"That this plaintiff's assignors personally rendered and performed the services and assistance mentioned in the complaint on file herein, in harvesting about seven or eight stacks of hay on the premises mentioned in the complaint, between the fifteenth day of June, 1904, and the seventh day of September, 1904, the said stacks of hay so harvested being the first part of said crop that was harvested, and which was so cut and harvested by the plaintiff's assignors prior to the seventh day of September, 1904, and thereafter one William F. Hardwick cut, harvested and put up the remainder of said crop of hay under a contract with William F. Scott, which is the subject of litigation between said parties in this court in another suit; and that the hay above mentioned which was harvested by the assignors of this plaintiff was all cut and harvested prior to the levy upon said hay by the defendant, George Griffith, sheriff; and was a part and parcel of the crop of hay grown upon said ranch during said year, under the lease held by said William F. Scott."

Appellant submits three reasons why the judgment should be reversed: 1. That the complaint does not state facts sufficient to constitute a cause of action; 2. That the liens, and each of them, as filed, are void for uncertainty; 3. That the

facts as stipulated are not sufficient upon which to enter a judgment or decree foreclosing the liens. That the remedy sought to be invoked in this action is purely statutory is not disputed by respondent, and if his judgment is to be upheld, it must be apparent from the record that there has been a substantial compliance with the statutory provisions relative to the filing of the liens sought to be enforced. If the liens were not filed within the statutory time, or if the description of the property as described in the liens falls short of the requirements of the statute, then respondent was not entitled to his judgment of foreclosure and decree ordering the sale of the hay in dispute to satisfy the judgment.

Counsel for respondent earnestly insists that the liens themselves, as well as the stipulations, fall short of the requirements of section 7, chapter 2 (Sess. Laws 1899, p. 151), to wit: "Every person within sixty days after the close of the rendition of the services, or after the close of the work or labor mentioned in sections 1 and 2 of this chapter, claiming the benefit hereof, must file for record with the county recorder of the county in which such saw logs, spars, etc., . . . . notice of claim containing statement of his demand, and the amount thereof, after deducting, as near as possible, all just credits and offsets, with the name of the person by whom he was employed. The notice of claim shall state what such service, work or labor is reasonably worth; and it shall also contain a description of the property to be charged with the lien sufficient for identification with reasonable certainty." Section 1, chapter 3 (Sess. Laws 1899, p. 153), provides: "Any person who does any labor on a farm or land in tilling the same, or in cultivating, harvesting, or housing any crop or crops raised thereon, has a lien on all such crop or crops for such labor, and such lien shall be a preferred and prior lien thereon to any crop or chattel mortgage placed thereon, and all chattel or crop mortgages of any crop or crops, upon which any person shall perform labor in cultivating, harvesting, or housing the said crop, shall take such mortgage subject to, and said mortgage shall be a subsequent lien." Section 2, chapter 5 (Sess. Laws 1899, p. 155), relating

to the subject of liens, says: "This act establishes the law of this state respecting the subject to which it relates, and its provisions and all proceedings under it are to be liberally construed with a view to effect this object." The last legislation we have on the subject of farm laborers' liens may be found on page 94 (Sess. Laws 1903), and is as follows: "Any person who does any labor on a farm or land in tilling the same, or in cultivating, harvesting, threshing, or housing any crop or crops raised thereon has a lien on such crop or crops for such labor, and such lien shall be a preferred and prior lien thereon to any crop or chattel mortgage placed thereon, and any mortgagee taking chattel or crop mortgage on any crop or crops, upon which any person shall perform labor in cultivating, harvesting, threshing, or housing said crop, shall take such mortgage subject to, and such mortgage shall be a subsequent lien to that of the person or persons performing such labor as to a reasonable compensation for such labor; provided, that the interest in any crop of any lessor or lessors of land where the premises are leased in consideration of a share in the crops raised thereon is not subject to such liens." It appears from the foregoing section of the statute that it was the intention of the legislature to protect the man who performs labor in producing a crop of hay or other agricultural crop in reasonable wages due him for such labor or services rendered in raising the crop, harvesting or threshing it; in fact, it seems to us that he is entitled to his lien no matter what the work, labor or services may have been, so long as it is shown it was for a useful purpose, the charges reasonable, and that he has not been paid, and that his lien takes precedence over all other liens no difference of what nature or character. In support of his contention that the description of the property contained in this lien is insufficient and void for uncertainty, counsel for appellant cites *Mohr v. Clark*, 3 Wash. Ter. 440, 19 Pac. 28. The facts in that case differ from the one at bar in one very important particular. In stating the facts Mr. Justice Allen says: "A finding of facts is stipulated for a decision herein upon the question 'whether a man is entitled to a lien for such work done by his servants, teams, etc., and

not by his personal labor.' It being further stipulated that said intervener was actually present during said threshing, and directed the same, and assisted therein, but never claimed or filed any lien for his personal services.''

Speaking of the farm laborers' lien law in that territory (now state) of Washington, the court said: ''It was intended to secure and protect personal earnings of laborers beyond question, and whether a man, because he may be doing labor, yet in the same labor is employing other laborers, and is thus also an employer or contractor, can come within the scope of this act is a very important question. So far as he may actually labor, he may come within the beneficent provisions of this law, but so far as his labor consists in looking after his laborers and supervising his contract, this comes rather in the line of a business, employment, or speculation, than that of personal labor. There is a clearly defined line between the contractor, the employer, and the laborer, and, although each may labor in his own way, the class to which the 'laborer' belongs is plain, and the contractor or employer certainly does not come within it.'' It will be readily seen that the question discussed and passed upon by the Washington court was the right of the contractor to obtain the benefit of the laborers' lien law (which is very similar to ours) by claiming in his own name for the labor of others. The last sentence of the opinion says: ''He relies squarely upon his right as an employer to claim a lien covering his employees' labor. This he cannot do.'' We think a correct construction of the law was announced in this case, and were the facts the same in the case at bar, we would perhaps follow it without hesitancy. Again, it is urged by counsel for appellant that the demurrer to the complaint should have been sustained for the reason that it does not comply with the provisions of the statute providing for laborers' liens, in that ''it does not state that he performed labor in caring for the crops to any amount or price, or that the labor performed was reasonably worth any amount or sum; it does not describe the property to be charged with any certainty whatever, nor could it be ascertained from the description; an officer could not find it

to sell it under the decree.'' He says the liens are in the same condition.

The third paragraph of the complaint says: ''That between the thirtieth day of June and the seventh day of September, 1904, at the special instance and request of defendant, William Scott, William Pilgrim rendered and performed labor and services and assistance to said defendant, William F. Scott, in harvesting said crop of hay growing and grown upon said ranch during the said year 1904 to the amount and value of $16.87, which said services were then and now are reasonably worth the said sum of $16.87, and under the terms and conditions of such employment on or about the seventh day of September, 1904, the said defendant and the said William Pilgrim had a settlement, and the balance then found to be due to the said William Pilgrim was determined, ascertained and agreed upon and found to be the sum of $16.87, which said sum said defendant agreed and promised to pay.'' This paragraph is reiterated in each cause of action stated in the complaint with reference to the various assigned liens to plaintiff. This statement is a substantial compliance with the statutes; it not only says that the services were reasonably worth the amount stated to be due, but also says that on settlement with defendant, William F. Scott, the amount claimed in the license was settled and agreed upon by said Scott, for whom the service was rendered, and the claimant, and that the same has not been paid. There was no error in overruling the general demurrer.

It is also urged that the description of the property described in the liens is too indefinite, in that ''the liens and each of them cover twenty-one stacks of hay, being about eight hundred tons, fourteen of which were harvested and cared for some time after the lienholders in this action had ceased to labor, and was harvested and cared for by one Hardwick under contract.'' It is shown by the agreed statement of facts that the ranch from which the hay was cut consists of about sixteen hundred acres, all under one fence, and that no crop was harvested from this ranch excepting the twenty-one stacks of hay, which was harvested and stacked during the

summer and fall months of 1904. So far as the record discloses, we are unable to ascertain whether the hay was stacked promiscuously over the acreage of the entire ranch or whether in a stackyard or yards. It is stipulated, however, that the seven stacks harvested, upon which plaintiff and his assignors contributed their labor and services, were in the stack prior to the levy of the attachment by defendant as sheriff.

Appellant asks, ''What stack or stacks of hay did either of these lienholders perform labor upon—the ones stacked in June, the ones stacked in July, the ones stacked in August, the ones stacked in September, or the ones stacked in October? On what part of the sixteen hundred acres of land is the hay stacked upon which they or either of them worked?'' We think section 1, chapter 3 (Sess. Laws 1899, p. 153), *supra,* answers all these questions. It says the laborer shall have a preferred lien on all the crops produced. Complying with this provision of our statute, respondent and his assignors filed their liens on all the hay produced on the Harkness ranch in the year 1904. The word ''all,'' as used in this provision of our law, has but one common and accepted meaning: it means the entire quantity, the whole amount, and when it says the laborer shall have a lien on all the crop produced, it does not mean that he shall file his lien on any particular or specified portion of the crop. He is not required to designate any particular stack or stacks of hay produced, or on what particular portion of the land the crop was produced or in what month it was harvested. If such had been the intent of the legislature, the language would have been: ''The laborer shall have his lien on such portion of the crop produced as his labor contributed to produce or harvest, and his said lien shall describe with sufficient particularity such portion, etc.'' Either this language or language of similar import would have been employed.

Another question arises as to the sufficiency of the answer filed by defendant sheriff to raise a number of the questions urged by counsel for appellant. It will be observed that both in the answer and the stipulated facts he does not pretend to inform the court the nature of the claim sued upon, and upon

which the attachment was issued. The lower court and this court are only informed that he levied upon the hay by virtue of an attachment issued out of the district court of Bannock county. The allegation in the answer is as follows: "Further answering defendant alleges, that on or about the third day of September, 1904, the said defendant, as sheriff of Bannock county, and by virtue of a writ of attachment issued out of this the said district court and directed to him as such sheriff, levied upon the hay mentioned in said complaint to the amount of about eight stacks, together with other property; that at that time and up to about the seventh day of September, 1904, defendant is informed and believes that there were only about eight stacks of hay cut and harvested upon the premises mentioned in the complaint. That thereafter, and up to about the fifteenth day of October, 1904, there were about thirteen stacks of hay, additional, harvested and stacked by one F. W. Hardwick and his employees under contract with the defendant, William F. Scott, and that neither the plaintiff nor either of his assignors were a party to said contract or had any interest therein or performed any labor thereunder whatever; and that what particular part of said crop of hay raised and harvested upon said premises the plaintiff or his assignors, or either of them, performed any labor or services upon is unknown to the defendant and it cannot be ascertained, by an inspection of the claim of liens filed by the sheriff, and his assignors, or from the complaint in this action. He therefore says that each and every of said claims of liens is absolutely void for uncertainty."

The stipulated facts add no additional force to the answer. Thus we have the defendant sheriff, who is merely brought into this action by reason of being sheriff of Bannock county, and required to set up and present to the court whatever right or claim he may have to the property in controversy in his answer, challenging the sufficiency of the liens and every material allegation of the complaint. This he may not do until he has first shown all the jurisdictional facts. He does not show that he has any interest in the property other than that he levied an attachment on a portion of the property

in controversy. He does not even inform the respondent who the attaching creditor is, the amount due on the debt, or who the debtor is. It is not apparent that the attachment is against the property of any of the parties to the action at bar. All this being true, how could respondent prepare himself to meet the issues appellant tenders or attempts to tender? We think the rule is well settled that an officer who seeks to justify a seizure of chattel property under a writ of attachment must show a valid writ, and the existence of all the jurisdictional facts that must exist before the writ can issue, and in *Sears v. Lydon,* 5 Idaho, 358, 49 Pac. 122, this court said: "He must do this by the record or a duly authorized copy thereof, of the attachment suit."

In *Fisher v. Kelly,* 30 Or. 1, 46 Pac. 146, and opinion by Chief Justice Moore of the supreme court of Oregon, in discussing the question of the sufficiency of the answer of an officer who attempts to justify his possession and right thereof, by virtue of a seizure and levy under a writ of attachment, at page 148 (46 Pac.), he says: "And the officer who acts for such creditor, in justifying an attachment of the property and his right to hold the possession thereof, must allege and show a debt due to his principal from the defendant in the writ. (*Damon v. Bryant,* 2 Pick. 411.) The rule is universal that an officer in justifying his right to hold the possession of attached property claimed by a stranger must allege and prove all the facts necessary to support the writ, and also that a debt existed in favor of the attaching plaintiff against the defendant therein; and having thus established the fact that the person for whom he acted is a creditor of such defendant, and by his lien upon the property had become in privity with it, he may then attack the title of the person claiming the property so attached." In support of this conclusion he cites *Sanford Mfg. Co. v. Wiggin,* 14 N. H. 441, 40 Am. Dec. 198; *Thornburgh v. Hand,* 7 Cal. 554; *Noble v. Holmes,* 5 Hill, 194; *Newton v. Brown,* 2 Utah, 126; *Trowbridge v. Bullard,* 81 Mich. 451, 45 N. W. 1013; *Glazer v. Clift,* 10 Cal. 303; *Braley v. Byrnes,* 20 Minn. 435 (Gil. 386), *Howard v. Manderfield,* 31 Minn. 337, 17 N. W. 946. Many

other authorities might be cited supporting this rule, but we deem it unnecessary; the reasons for it are so obvious and the justice so apparent that further citations or further discussion seems unwarranted. We conclude that neither the answer of defendant Griffith nor the stipulated facts as shown by the record are sufficient to enable him to question the validity of the liens of plaintiff and his assignors, and hence the judgment must be affirmed, and it is so ordered. Costs to respondent.

Ailshie, J., concurs.

Sullivan, J., concurs in the conclusion that the judgment must be affirmed in the facts of this case.