[File No. 6923]

LEWIS ROSENSTEIN, Appellant, v. WILLIAMS COUNTY, NORTH DAKOTA, a Public Corporation, Respondent.

(15 NW(2d) 378)

Opinion filed July 15, 1944.   Rehearing denied Aug. 4, 1944.

*Walter O. Burk,* for appellant.

*Eugene A. Burdick,* States Attorney, for respondent.

CHRISTIANSON, J.   This is an appeal by the plaintiff from an order which sustained a demurrer to the complaint on the ground that it does not state facts sufficient to constitute a cause of action.   The controversy involves the ownership of what is commonly denominated the "landlord's share" of crops produced by a tenant or cropper during the farming season of 1941.

The material facts as set forth in the complaint are substantially as

follows: The plaintiff Rosenstein was the owner of a tract of land in Williams County. He failed to pay taxes against the same and in the year 1940 the defendant, Williams County, acquired title thereto pursuant to the statutes which authorize a county, after proceedings had according to law, to obtain title to lands for unpaid delinquent taxes. The statutes provided that after due proceedings, and where no redemption was had, the property should "become the absolute property in fee of the county and the county auditor shall issue a tax deed therefor to the county in the same manner as to individual purchasers." Laws 1939, chap. 235, § 1.

The statutes further provided for a sale by the county, under the direction of the board of county commissioners, of lands so acquired by the county. Laws 1939, chap. 235, § 1; Laws 1941, chap. 286, §§ 10–19.

The laws in force at the time the defendant county acquired tax title to the lands in question here provided:

"Any real estate heretofore or hereafter forfeited to the county under tax deed proceedings, shall be subject to redemption by the owner whose title was forfeited, or his successor in interest, at any time while the tax title thereto remains in such county and prior to resale, upon the payment of the amount which would have been required to effect a redemption had no tax deed been issued thereon, plus interest at the rate of four (4%) per cent per annum, from the date of the execution of such tax deed; . . ." Laws 1939, chap 238, § 1.

The legislative assembly in 1941 amended the statutory provision last above referred to so as to read as follows: (Laws 1941, chap. 286, § 19):

"The owner, or his successor in interest, shall have the right to repurchase all real estate heretofore or hereafter, forfeited to the county under tax deed proceedings, so long as the tax title thereto remains in the county. Such purchase may be for cash or upon contract for deed made by and between the Board of County Commissioners and the owner, or his successor in interest. The consideration of such contract shall include: (1) The total amount required to be paid in the notice to effect a redemption. (2) The total amount of all subsequent taxes with interest, penalties and costs. Provided that if the fair

market value of such property at the time of the repurchase thereof, is less than the total amount to be paid to effect a redemption, together with all subsequent taxes, interest, penalties and costs, the Board shall fix a fair and just sales price for such property, and shall require the owner to pay at least twenty-five (25%) per cent of the total contract in cash and the remainder shall be payable in not to exceed ten (10) annual equal installments as the Board of County Commissioners may determine, which installments shall bear interest at four (4%) per cent per annum until paid in full. Such contract shall further provide that if the vendee or his successor in interest, fails to pay one or more of the installments, when due with interest, the Board of County Commissioners may cancel such contract and thereupon all payments and improvements made by the vendee or his successor in interest, shall be forfeited to the county as liquidated damages for breach of contract unless otherwise expressly provided. That upon the full performance of such contract, the county shall execute and deliver a deed to the purchaser which shall be executed in the same manner as tax deeds and shall have the same legal effect as prescribed by the terms of this Act."

Other sections of the statute provide that a tax deed issued to a county "shall pass the absolute property in fee to the county free from all encumbrances whatsoever" (Laws 1941, chap. 286, § 9); and that a deed from a county to a purchaser from it of lands which it has so acquired shall contain the following provision:

"Now, therefore, the said county as party of the first part in consideration of the premises and pursuant to authority of law, does hereby grant, bargain, sell and convey to the second party, his heirs and assigns, that certain real property situated in said County of ———, North Dakota, described as follows, towit: To have and to hold the above described real property with all of the appurtenances thereunto belonging to the said party of the second part, — heirs, and assigns forever." Laws 1941, chap. 286, § 15.

The defendant county rented the premises in question here for the farming season of 1941 to one Vernon Knox, under an arrangement whereby a certain portion of the crop produced was reserved for, or would be turned over to, the county as compensation for the use of the land. On July 31, 1941, the plaintiff made written application to the

county to repurchase the tract under the provisions of the statute above quoted and tendered the full amount which he was required to pay to effect such repurchase. The application was approved by the county commissioners of the defendant county and a proper written conveyance of the lands was made by the county to the plaintiff as prescribed by the law. At the time of such repurchase and conveyance, the crop that had been planted by Vernon Knox, under the arrangement with the county "was still green and unmatured." Immediately thereafter and while the crop was still unmatured, the plaintiff took possession of the premises and made demand for the share of the crop which it had been agreed between Knox and the defendant county should be turned over to the county as the landlord's or landowner's share of the 1941 crop as compensation for use of the land. The plaintiff claims that such share passed to him as an incident of the deed and that he is entitled thereto. The defendant county, on the other hand, claims that under the doctrine of emblements such share did not pass with the deed; that such share belongs to the county and that it had the right to receive and retain the same.

We are agreed that under the facts stated in the complaint the plaintiff is entitled to the share of the crop which the tenant or cropper, Vernon Knox, agreed the county should receive as compensation for use of the land. The right to rent which is to accrue passes to the grantee as an incident of the deed. Martin v. Royer, 19 ND 504, 508, 125 NW 1027; 36 C.J. pp. 364 et seq; 1 Thompson, Real Property, Perm. ed. pp. 437, 438, 457 et seq.; 8 Thompson, Real Property (Perm. ed.) pp. 527, 528; National Bank v. Lefferdink, 110 Neb 275, 193 NW 916; Clark v. Strohbeen, 190 Iowa 989, 181 NW 430, 13 ALR 1419. The deed, which the statute required the county to execute and deliver to the plaintiff, conveyed to him all the rights and interests of the county, including any rent for the premises thereafter to accrue or any crops, then growing upon the land, belonging to the county. The deed prescribed by the legislature contains no reservation. The purpose of the statute was to reinvest the owner upon completion of the purchase with all the rights, title and interest of the county. The statute requires the former owner in order to effect a repurchase to pay for the land; (1) the total amount required in the notice of expiration of period of re-

demption to effect redemption and the total amount of all subsequent taxes with interest, penalties and costs; or (2) if the fair market value of the land at the time of the repurchase is less than the total amount of the sum to be paid to effect redemption together with all subsequent taxes, interest, penalties and costs, then the former owner is required to pay the amount of a fair and just sales price for the property as fixed by the Board of County Commissioners. The effect of the statute is to make the former owner "a preferred purchaser without profit to the county." State v. Morton County, 56 ND 712, 715, 219 NW 223, 224.

The respondent, however, contends that under the statute the county had no option but to accept the offer of the former owner, and that consequently its term of tenure was uncertain and indefinite; that such tenure might be terminated at any time the former owner saw fit to exercise his right to repurchase, and, hence, under the doctrine of emblements, the county is entitled to the landlord's share of the crop. The contention can not be sustained.

"The doctrine of emblements is the common-law right of a tenant, whose lease of an uncertain duration has been terminated without his fault, and without previous knowledge on his part, to enter upon the leased premises to cultivate, harvest, and remove the crop 'planted by him before the termination of his lease.' 3 Thompson, Real Property, Permanent ed. p. 814.

"The term 'emblements' denotes the right of a tenant to take and carry away, after his tenancy has ended, such annual products of the land as have resulted from his own care and labor. The right to emblements was limited at common law to those cases where the tenant had an uncertain interest which was determined after the sowing of the seed and before severance of the crop grown therefrom. Emblements are the away-going crop; in other words, the crop which is upon the ground and unharvested when the tenant goes away, his lease having determined; and the right to emblements is the right in the tenant to take away the away-going crop, and for that purpose to come upon the land and do all necessary things thereon. It is the common practice for the crop to be termed the away-going crop and the tenant the off-going tenant." 1 Thompson, Real Property, Perm. ed. p. 192.

This case does not involve any question as to the right of a tenant who has planted crops, to harvest, thresh, and remove such crops after his tenancy has ended. Indeed, no right of a tenant is involved at all. The county was not a tenant; it was an owner. It was as owner that it entered into the arrangement with Knox whereby he was given the right to farm the land during the farming season of 1941. It was as owner that it subsequently conveyed the land to the plaintiff. The county did not plant any crop. The crop was planted by a person who entered into possession and farmed the land under an agreement which such person had made with the county as the owner of the land. The person who planted the crop has harvested and threshed the same, and no question has been raised as to his right to do so.

It is immaterial whether the arrangement between Knox and the county created the relation of landlord and tenant, whether it gave to the county any interest in the growing crop, or whether the ownership of the entire crop was vested in Vernon Knox. Martin v. Royer, 19 ND 504, 125 NW 1027, supra. The deed from the county vested in the plaintiff the right and title of the county to any crops then growing on the land (Tanous v. Tracy, 55 ND 100, 212 NW 521), and also the right and title to any unaccrued rent. Martin v. Royer, supra; Clark v. Strohbeen, 190 Iowa 989, 181 NW 430, 13 ALR 1419, supra.

The order appealed from is reversed and the cause is remanded for further proceedings conformable to the law.

Morris, Ch. J., and Burke, Nuessle and Burr, JJ., concur.

Christianson, J. (On petition for rehearing) Appellant has petitioned for a rehearing. It contends that the former opinion in effect holds that the doctrine of emblements is limited to situations arising out of a landlord and tenant relationship; that the doctrine is not so limited, and that it applies with equal force in other situations where no true relationship of landlord and tenant is involved, such as the one presented where a life tenancy is terminated and there are then growing annual crops which have been planted by a subtenant with rent payable to the life tenant in the form of a share of the crop. In support of the contention, attention is called to the decision of the Supreme Court of

Nebraska in the case of Re Mischke, 136 Neb 875, 287 NW 760, 125 ALR 277, and a statement in 15 Am Jur 216, Crops, § 24.

The quotations from Thompson on Real Property, set forth in the former opinion, were adopted because they quite pertinently show the origin and the general application of the doctrine of emblements. As we read them, such quotations do not in any manner indicate that the doctrine of emblements does not apply to a life tenancy; and under the common law from which the doctrine stems, it was deemed applicable to a life tenant and to a subtenant of the life tenant. 1 Co. Litt. 55b; 2 Blackstone's Commentaries, 122, 1 Cooley's ed. 527.

The authorities that are cited in support of the petition for rehearing, we think, lend no support to the contention that the doctrine of emblements entitles the county to the share of the crop which the tenant agreed to pay the county as compensation for the use of the land.

Re Mischke involved a situation where a life tenant rented the tract of land in which she had a life estate on terms whereby she was to receive a certain share of the crop as rent. The lessee planted the crop, and harvested the same after the life tenant died, and the question arose whether the executor of the estate of the life tenant or the remaindermen were entitled to receive the share of the crop which the lessee had agreed under the lease to pay to the life tenant as compensation for use of the land.

The statement in American Jurisprudence (15 Am Jur 216, Crops, § 24) on which appellant relies is as follows:

"Emblements are corn and other crops of the earth which are produced annually, not spontaneously but by labor and industry. A distinct and well-defined doctrine commonly known as the doctrine of emblements or away-going crops has been developed in reference to the ownership of such crops in the event of the termination under certain conditions of the estate or tenancy of the person who planted them. The doctrine is fundamental in respect of the relationship of landlord and tenant, but, as hereinafter appears in reference to life estates, it has been applied in some situations where no true relationship of landlord and tenant was involved. The doctrine or right of emblements entitles one who holds land for a period subject to termination at a time which he cannot ascertain beforehand to remove from the land after

the termination of his tenancy the annual crops or emblements which he has planted thereon prior to such termination, if the termination is brought about without any fault on his part or without any act of his intended to bring about such a result. The doctrine allows the tenant to enter upon the land, to cultivate his immature crops, and harvest them when they become mature, but this right is merely one of ingress and egress for necessary purposes. It does not constitute a right to the possession of the land. For all purposes other than permitting the tenant to give due attention to and gather his crop, the reversioner has the right to the exclusive possession of the land. Nor does the right include more than one crop a year from the same stubble. The basis of the doctrine is the justice of assuring to the tenant compensation for his labor, and the desirability of encouraging husbandry as a matter of public policy."

No good purpose would be served by attempting to collate or analyze the many cases in which the doctrine of emblements has been invoked. The basis for the doctrine, and the fundamental conditions which warrant its application are well set forth in the foregoing quotation from American Jurisprudence, and in the quotations from Thompson on Real Property in the former opinion. In this state, the doctrine is recognized by statute (Laws 1913, § 5343) and has been made applicable to tenancies and situations where the application of the common law doctrine might be doubtful. (2 Tiffany, Landlord & Tenant, § 251, p. 1636, note 54.)

We are unable to see any basis for the application of the doctrine of emblements, so as to entitle the defendant county to the share of the crop, which the lessee agreed to pay as compensation for use of the land. The county was the owner of the land. It did not plant a crop. It rented the land to Knox. The county furnished only the use of the land. The person to whom the land was leased did all the rest. He produced the crop. He agreed to pay a certain amount of the crop which he produced as rent for the land. The rent was to be paid after the crop had been threshed. Before the crop was matured the lessor (county) sold and conveyed the land to the plaintiff by a deed, which according to its terms operated to transfer to the plaintiff (the grantee named in the deed) any interest and right that the grantor might have

in crops then growing upon the land, or any right and interest the grantor might have in unaccrued rents. Under the express terms of Comp. Laws 1913, § 5343, the lessee (Knox) had the right to go upon the premises and carry on the work necessary in caring for the crop, and harvesting, threshing, and removing the same. His right to do so has never been questioned. He harvested and threshed the crop. The fundamental purpose of the doctrine of emblements—"The justice of assuring to the tenant compensation for his labor, and the desirability of encouraging husbandry as a matter of public policy" (15 Am Jur 217, Crops, § 24; 2 Tiffany, Landlord & Tenant, p. 1632)—has been met.

Appellant further contends that chap. 237, Laws 1939—the law under which the county rented the land to Vernon Knox—in effect extended the doctrine of emblements so as to render the same applicable in favor of the county, where under the lease a share of the crop is to go to the county for rent.

Section 1 of the Act provides that (with certain exceptions which are not material here) the county commissioners shall have authority to lease lands which the county has acquired pursuant to tax deed proceedings. The act further provides:

"Sec. 2. All leases of such lands shall be made subject to sale and shall be limited in duration to a term of not to exceed five years; provided, however, that, in the discretion and sound judgment of said county commissioners, any piece or parcel of grazing land may be leased for grazing purposes without being subject to sale and for a term of not to exceed ten years to any duly incorporated cooperative grazing association or to any duly incorporated soil conservation district, or to any individual within this State.

"Sec. 3. Said county commissioners shall not expend more than ten per cent of the total revenue collected from all such leases to defray any and all costs in connection with the supervision and collection of the rentals.

"Sec. 4. All of the net revenue derived from said leases including all Federal payments made in connection therewith, in an amount not less than ninety per cent of the total revenue collected, shall be paid into the county treasury of the respective counties. . . ."

Appellant places especial reliance upon § 4 of the act. The contention seems to be that the rights of a former owner, who makes repurchase and obtains a deed, are made subject to the terms of the lease as to the payments to be made by the lessee for use of the land, so that the county has the right to such payments notwithstanding the conveyance of the land by the county.

We are unable to agree with this contention. The statute must be construed as a whole. It must be construed also together with Laws 1941, chap. 286, pursuant to which the land was repurchased, and the deed to the plaintiff given. When so construed, it seems to us to lead to a result contrary from that contended for.

The lease for the lands in question here was of the type which § 2 of the Act (Laws 1939, chap. 237) says "shall be subject to sale." Section 4 (upon which appellant relies) does not say that rent to be paid for the land shall belong to the county. It says: "All of the net revenue *derived* from said leases . . . shall be paid into the county treasury." This merely provides for the disposition of revenue received; that is, for the disposition of rent received by the county.

The legislative assembly which convened in January, 1941, enacted a rather comprehensive measure relating to the sale of lands to which the county has acquired title by tax deed proceedings. Laws 1941, chap. 286. Such measure provided precisely the conditions under which a former owner of land that had been forfeited to the county under tax deed proceedings might repurchase the same, including the price to be paid therefor. Id. § 19. It further prescribed the form of deed to be given by the county. The language of the deed is set forth in the former opinion. No reservation is made in such deed of any interest in growing crops, or of unaccrued rent.

The principal provisions of the deed are set forth in the former opinion. The language is absolute and unconditional, and under well settled principles the language employed would operate to transfer to the purchaser any and all interest the county might have in any crops growing on the land, as well as any right and title it might have to any unaccrued rent for the land. We adhere to the former opinion. A rehearing is denied.

MORRIS, Ch. J., and BURR, NUESSLE, and BURKE, JJ., concur.