R. J. ULRICH and L. B. Schulte, Plaintiffs and Appellants,

v.

AMERADA PETROLEUM CORPORATION and McKenzie County, a Municipal Corporation, Defendants and Respondents.

No. 7426.

Supreme Court of North Dakota.

Oct. 2, 1954.

Rehearing Denied Oct. 29, 1954.

398

Q. R. Schulte, Stanley, for plaintiffs and appellants.

Harold J. Fisher, Williston, John S. Miller, Tulsa, Okl., for defendant and respondent, Amerade Petroleum Corporation.

Strutz, Jansonius & Fleck, Cox, Pearce & Engebretson, Bismarck, amici curiae.

GRIMSON, Judge.

This is an action to quiet title. Plaintiffs claim to be the owners of Lots One and Two (1–2), East Half (E½) of Northwest Quarter (NW¼) and the Northeast Quarter (NE¼) of Section Thirty-one (31), Township One Hundred Fifty-one (151), North, Range Ninety-four (94) West of the 5th P.M. The defendant, Amerada Petroleum Corporation, claims to hold an oil and gas lease on said premises. McKenzie County makes no appearance. The purpose of the lawsuit is to determine the validity of said oil and gas lease. The district court found for the defendant and plaintiffs appeal demanding trial de novo.

The facts show that a patent to the land in question was issued by the United States to George Parshall, (also known as Geo. Parshall) on Oct. 28, 1919. He remained the owner thereof until his death in 1951. On March 1, 1940, the county auditor of McKenzie County, after due tax sale proceedings, conveyed the premises by an auditor's tax deed to McKenzie County on default in payment of taxes for the year 1928 and subsequent years. McKenzie County thereupon entered into possession of said land. On Feb. 1, 1949, McKenzie County executed and delivered an oil and gas lease covering said premises to A. M. Fruh and Thomas W. Leach as lessees which they duly filed and had recorded in the office of the Register of Deeds of McKenzie County on Feb. 7, 1949. No notice of this pending lease was given to the prior owner before its issue. On March 28, 1949, the said lease was assigned to the defendant, Amerada Petroleum Corporation, who is still the owner thereof. The assignment was recorded in the office of the Register of Deeds of McKenzie County on Sept. 7, 1949. In 1950 McKenzie County had an offer for the purchase of the premises and on Oct. 2, 1950, the county auditor duly notified George Parshall in accordance with Section 18, Chapter 286 S.L.1941, now Section 57–2818 NDRC 1943, of said offer and the amount necessary for him to make redemption under said chapter. Within thirty days said George Parshall did make such redemption of the premises from McKenzie County and a county deed. was executed and delivered to him, dated Nov. 6, 1950, recorded March 4, 1952, conveying said property to him "in as full and ample manner as the said county is empowered by law to sell the same." After said George Parshall died in 1951 a decree of heirship was filed and recorded, naming his heirs. All of said heirs quitclaimed to one Guy Fox who thereafter conveyed said premises to the plaintiffs by warranty deed. No ratification of said lease has been made except to 80 mineral acres sold by one of the plaintiffs and ratified by the successors in interest of the prior owner.

There is no question raised as to the validity of the tax sale proceedings. The only question for determination is whether McKenzie County had the authority to enter into an oil and gas lease during the time it held title to the premises subject to the right of the former owner to repurchase.

The counties are political subdivisions of the state. The authority of the county commissioners and of the administrative county officers in the management of the business affairs of the county is prescribed by statute. Title 57 NDRC 1943 provides for the assessment of property and the collection of taxes. Provision is also made for the sale of land for delinquent taxes and for the redemption thereof by the owner. Chapter 57–28 NDRC 1943 establishes the rights of the county when the lands are not redeemed.

Section 57–2808 NDRC 1943 provides that the failure to make redemption passes the "right, title, and interest of the owner, mortgagee, or lienholder in and to said premises, to the county by operation of law". This court has repeatedly held that a valid tax deed grants a complete title to the land. In Baird v. Stubbins, 58 N.D. 351, 226 N.W. 529, 530, 65 A.L.R. 1009, it is held:

"A valid tax deed clothes the grantee with a new and complete title in the land, under an independent grant from the sovereign authority, which bars and

extinguishes all prior titles and encumbrances of private persons whether of record or otherwise." See also Peterson v. Reishus, 66 N.D. 436, 266 N.W. 417, 105 A.L.R. 724; Nelson v. Murton, 68 N.D. 108, 277 N.W. 390; Buman v. Sturn, 73 N.D. 561, 568, 16 N. W.2d 837; Hefner v. Northwestern Mut. L. Ins. Co., 123 U.S. 747, 8 S.Ct. 337, 31 L.Ed. 309, 311; Coverston v. Grand Forks County, 74 N.D. 552, 23 N.W.2d 746.

When the county receives a tax deed the prior owner or lienholder loses all interest in the property. The county has foreclosed its tax lien and is not holding the land any more as security for the payment of the taxes. The county's lien is merged in the tax deed vesting in the county complete title to the land in lieu of the payment of the delinquent taxes. The cases cited by plaintiffs involved the rights of the owner before the issuance of a tax deed to the county, and do not apply after tax deed issues. Eikevik v. Lee, 73 N.D. 197, 13 N.W. 2d 94; Buman v. Sturn, 73 N.D. 561, 16 N.W.2d 837.

With the ownership of the land absolute in the county since March 1, 1940 defendant claims that the county had a right on Feb. 1, 1949 to make an oil and gas lease on said property under Chapter 156 S.L. 1937. Section 1 of that act grants the county commissioners "the right, power and authority to demise, lease and let, both real and personal property, which the County may have acquired through purchase, forfeiture or operation of law, for the purpose of mining, and operating for oil and gas, laying pipe lines, and for establishing and maintaining tanks, power stations and structures thereon, to produce, save, sell and take care of said product." Lands obtained by the county through tax procedure are lands acquired by the county "through forfeiture or operation of law." Rosenstein v. Williams County, 73 N.D. 363, 15 N.W.2d 378; Buman v. Sturn, 73 N.D. 561, 16 N.W.2d 837; McDonald v. Abraham, 75 N.D. 457, 28 N.W.2d 582.

The plaintiffs contend that this chapter, 156 S.L.1937, is superceded by Chapter 237 S.L.1939. They claim that the latter chapter repeals by implication the right of the county commissioners to lease for oil and gas.

A comparison of the title of the two acts shows that the 1937 act gives general authority to the county commissioners to lease tax acquired real estate of the county for mining and drilling purposes while Chapter 237 S.L.1939 gives the county commissioners authority to lease real property acquired by tax deed and not sold or leased. The former is a general act for the leasing of county property for the purpose of mining and operating for oil and gas. The latter is clearly a general act for leasing for agricultural and grazing purposes the tax acquired lands of the county that have not already been sold or leased for oil and gas and provides the terms thereof. There is no conflict between the two acts. Both can be reconciled and both made effective. Coulter v. Ramberg, N.D., 55 N.W.2d 516.

Moreover, Chapter 163 S.L.1941, now Section 38–0905 to Section 38–0910 NDRC 1943, authorizes the county to approve and adopt oil and gas leases executed by the owner of lands which have been later forfeited to the county in tax proceedings. That is really complementary to the general authority of the county to grant oil and gas leases as provided by Chapter 156 S.L. 1937, now Section 38–0911 NDRC 1943, and confirms the intention of the legislature to grant full authority to the counties to lease tax acquired lands for oil and gas.

It is further claimed for the plaintiffs that when the prior owner, their predecessor in title, repurchased his land from McKenzie County on Nov. 6, 1950, under Sections 57–2818, 57–2819 NDRC 1943, he regained the complete title to all the real estate he forfeited; that the oil and gas lease is a sale of an interest in real property which the county had no authority to make except upon the notice provided in

that chapter which was not given; that, therefore, the lease is void.

The defendant contends, however, that the repurchase provisions, Sections 57–2818 and 57–2819 NDRC 1943, apply only to transfers by deed and that no notice to prior owner is required unless the county has the opportunity to sell the tax forfeited land by deed. It is pointed out that the statutes provide for all transfers of forfeited real estate by the county by way of a deed "conveying all right, title and interest of the county" in such land. Sections 14 and 15, Chapter 286, S.L.1941. This provision also applies to transfer by deed to the prior owner if he repurchases and to the new purchaser if the prior owner does not repurchase within the thirty days. Sections 18 and 19, Chapter 286 S.L.1941. Defendant argues that it must be inferred therefrom that the legislature intended these sections to apply only in case of a sale by a deed and that the county has a right to transfer any interest in such land by means of a lease during the time it held title since all it had to deliver to the owner on repurchase was its "right, title and interest" in the land at that time. Therefore, he contends that McKenzie County had the right to grant the oil and gas lease in question during the time it held title to the land and that the prior owner was not entitled to notice thereof.

The law, Chapter 286 S.L.1941, now Section 57–2819 NDRC 1943, gives the prior owner the right to repurchase "all real estate" which he has forfeited to the county. The word "all" when referring to amount, quantity or extent means "the whole of." Webster's International Dictionary, Second Edition. "All. Means the whole of—used with a singular noun or pronoun, and referring to amount, quantity, extent, duration, quality, or degree." Black's Law Dictionary. An analogous use of the word "all" is found in Johnson v. Glaspey & Rennie, 16 N.D. 335, 113 N.W. 602, 603, as follows:

"We cannot conceive of any costs to which the prevailing party in the district court would be entitled on appeal,

or on the dismissal of an appeal from the justice court which would not be included in the term 'all costs,' * *."

" 'All' means everything to which it is applied." Sommerville's Estate, 64 S.D. 238, 266 N.W. 158, 160.

In Beckstead v. Griffith, 11 Idaho 738, 83 P. 764, 767, it is said: "The word 'all' * * * has but one common and accepted meaning; it means the entire quantity, the whole amount * * *." In Haverly v. Elliott, 39 Neb. 201, 57 N.W. 1010, 1011, the court says: "The word 'all' does not mean some, nor a part, but it means the whole, * * *." This definition is again approved in Joslin v. Williams, 76 Neb. 594, 107 N.W. 837. As there said that is a common-sense definition.

We are agreed that that definition applies in the use of the word "all" in connection with the repurchase of his land by the former owner, Section 57–2819 NDRC 1943. It means the whole title to the land that had been forfeited may be repurchased by the prior owner. It is true that upon repurchase the county transfers only its right, title and interest in the real estate to the prior owner by deed but that must include all the right, title and interest that the county obtained by the tax sale proceedings. It makes no difference whether the county's opportunity to sell is by lease. If it involves a sale of an interest in real estate the provisions of Section 57–2818 NDRC 1943 apply. The provision in Section 57–2818 NDRC 1943, that the tentative purchaser shall be entitled to a deed if the former owner does not repurchase must be construed as applying to a lease where the offer to purchase is only an interest in real estate by way of a lease. " 'Every statute must be construed with reference to the policy intended to be accomplished' ". State ex rel. Skeffington v. Seigfried, 40 N.D. 57, 168 N.W. 62, 64. The policy of the legislature is clearly that the former owner should have full opportunity to repurchase his whole interest in the land forfeited. The use of the phrase "all right, title and interest" in the deed is rather to protect the county against imper-

fections in the tax sale proceedings than to give the county any authority to dispose of any interest in that land while it holds the title.

██ By the lease in question McKenzie County did "grant, demise, lease and let" unto the lessee the premises in question for the purpose of exploring, mining and operating for oil and gas at 25 cts. per acre, payable annually, and ⅛th of the gross proceeds each year for any gas and oil used off the premises. Under this lease, if gas and oil were found in the operation for oil and gas, a portion thereof was sold to the lessee. That amounts to a conveyance of an interest in real property. We held in Petroleum Exchange Inc., v. Poynter, N.D., 64 N.W.2d 718, 726, that "oil, gas and mineral leases are transfers of interests in real property". See also Piney Oil & Gas Co. v. Allen, 235 Ky. 767, 32 S.W.2d 325; Standard Oil Co. of Louisiana v. Oil Well Salvage Co., 170 Ark. 729, 281 S.W. 360; McCracken v. Hummel, 43 Cal.App.2d 302, 110 P.2d 700; Callahan v. Martin, 3 Cal. 2d 110, 43 P.2d 788, 101 A.L.R. 871; Gulf Oil Corp. v. Marathon Oil Co., 137 Tex. 59, 152 S.W.2d 711.

██ Both Chapter 156 S.L.1937, now Section 38-0911 NDRC 1943, and Chapter 286 S.L.1941, now Sections 57-2818 and 57-2819 NDRC 1943, deal with the transfer of an interest in real estate by the county. The former authorizes the county commissioners to lease the forfeited lands for gas and oil. The latter gives the prior owner a chance to repurchase all his forfeited lands while the title thereof remains in the county. The question for us to determine is whether these statutes conflict or whether they can be reconciled. If there is a conflict the last or special statute would control. Village of Dazey v. Barnes County, 70 N.D. 752, 298 N.W. 13; Kershaw v. Burleigh County, 77 N.D. 932, 47 N.W.2d 132. If an inconsistency in two statutes can be avoided and their terms harmonized both will be upheld. State v. Young, 68 N.D. 300, 279 N.W. 251; Coulter v. Ramberg, supra.

"In the construction of statutes a determination must be made as to what was the intention of the legislature in the enactment therof. Such intent is the controlling factor and must be given effect to the fullest degree. As aides in finding that intent, the reason for the enactment of the law, evils at which the legislation is aimed, the historical background and other statutes on related subjects may be considered." Coulter v. Ramberg, N.D., 55 N.W.2d 516, 519, 521, and cases cited.

During the hard times of 1930 to 1940 many taxpayers were unable to pay their taxes and were losing their lands by tax deed proceedings. To encourage a taxpayer, who had lost his land because of his inability to pay his taxes, the legislature, in 1939, passed Chapter 238 S.L.1939, p. 402. The first section thereof provides:

"Any real estate heretofore or hereafter forfeited to the county under tax deed proceedings, shall be subject to redemption by the owner whose title was forfeited, or his successor in interest, at any time while the tax title thereto remains in such county and prior to re-sale, upon the payment of the amount which would have been required to effect a redemption had no tax deed been issued thereon, plus interest at the rate of four (4%) per cent per annum, from the date of the execution of such tax deed; provided that such right of redemption shall not interfere with the existing right of the county to re-sell real estate acquired by tax deed at any time as otherwise provided by law. Where a redemption is made under this act, the county auditor shall execute a quitclaim deed in behalf of the county for such real estate to the person making such redemption."

The second section gave any person making such redemption the right to take advantage of the benefits of any tax reduction or adjustment provided by that session of the legislature.

Section 3 gives the county commissioners the authority to enter into a contract for

the re-sale to the former owner or his successor in interest of any real estate which had been forfeited to the county on tax deed proceedings under the terms therein prescribed.

Section 4 provides:

"This act is in the nature of supplemental emergency legislation designed to encourage and facilitate the redemption or repurchase of real estate forfeited to the counties on tax deed by former owners and shall be liberally construed to carry out that purpose."

In 1941 this Chapter 238 S.L.1939 and Chapter 235 S.L.1939 which regulated tax deed proceedings, were repealed and a complete new act on tax deed proceedings was enacted in Chapter 286 S.L.1941, now Chapter 57–28 NDRC 1943. In that chapter were included the provisions of Chapter 235 S.L.1939 providing for the redemption and repurchase by the former owner of *all real estate*, forfeited to the county under tax deed proceedings. Some new provisions were added. Section 18 of said Chapter 286 provided "that if such property is sold at private sale to any other person than the original owner or his successor in interest, such sale shall be held in abeyance for a period of thirty (30) days from the date of notice to the owner or his successor in interest given by registered mail by the county auditor during which time the original owner or his successor in interest may" redeem or repurchase said property according to the provisions of said Sections 18 and 19 of said chapter.

It will be noticed that in the original act, Chapter 238 S.L.1939, supra, there was a special provision that the prior owners "right of redemption shall not interfere with the existing right of the county to resell real estate acquired by tax deed at any time as otherwise provided by law." In Chapter 286 S.L.1941 that provision was omitted. In that same chapter also the provision that a thirty day notice of a private sale had to be given to the prior owner during which "such sale shall be held in abeyance" was first enacted. These two changes in the law indicate that it was the deliberate intention of the legislature to eliminate the right of the county to sell the real estate during the time the owner was given the right to repurchase. That was in accordance with and in furtherance of the policy of the legislature to give the former owner a chance to repurchase his tax forfeited real estate. State ex rel. Skeffington v. Seigfried, supra.

The policy of the legislatures during the depression to give the property owner all possible leeway and opportunity to save his land from tax forfeiture is clearly indicated, not only in this act, but in all tax proceedings.

"It is a matter of common knowledge that a severe depression existed in North Dakota during the period from 1930 to 1940. The conditions as to crops and prices prevailing made the cash resources of people very small. Very many people were unable to pay their taxes. The local and state governments were in difficulties for lack of tax receipts sufficient to carry on the processes of government. A real emergency faced the people and the government. This gave rise to the attempts of the legislatures meeting during that time to ameliorate those tax problems as far as possible. The five sessions of the legislature meeting in that decade passed 91 acts on taxes." Coulter v. Ramberg, N.D., 55 N.W.2d 516, 519.

During the 1931–1941 sessions of the legislature relief was provided to the taxpayers by reduction of penalty and interest on payment of taxes, by an extension of time for payment of taxes and redemption of land from tax sales, and by moratoria on tax deed proceedings. Clearly the intent was to enable the taxpayer to retain his property. See Chapter 238 S.L.1933, Chapter 277 S.L.1935, Chapter 280 S.L.1935, Chapter 240 S.L.1937, Chapter 227 S.L. 1939, Chapter 235 S.L.1939, and especially Chapter 238 S.L.1939, heretofore quoted.

Considering these acts of the legislature as well as the origin and development of Chapter 238 S.L.1939 as heretofore shown,

and the policy of the legislature it seems clear that in passing Sections 18 and 19, Chapter 286 S.L.1941, the legislature intended to give the prior owner of tax forfeited lands the opportunity to repurchase the entire real estate he had forfeited to the county. A liberal construction of Chapter 286 S.L.1941, as required by said chapter, necessitates a holding that the prior owner must be given thirty days in which to redeem or repurchase before a private sale of any interest in the real estate can be closed by the county. This is in accordance with our decision in Bloomdale v. Rutland, 74 N.D. 651, 24 N.W.2d 38, 40, where we held:

"The legislature has provided three ways by which a county may dispose of tax deed property. (1) It may sell the property to the highest bidder as provided by Sec. 14, of Ch. 286. (2) *It may sell the property at private sale under Secs. 17 and 18 of Ch. 286, in which event the former owner or his successor in interest must be given thirty days' notice.* (3) It may proceed in the manner set forth in Ch. 118, Sess.Laws ND 1935, and set aside and transfer the property for park and recreational purposes and may convey the same to a city or village for park or recreational purposes or both. (Emphasis ours.)

Under this holding a private sale of a gas and oil interest in land by the county commissioners after the county obtains tax deed would come under the second provision for disposing of tax acquired property.

■ The original provision in Chapter 238 S.L.1939 gave the right of repurchase to "the owner whose title was forfeited, or his successor in interest, * * *." That provision was repeated in Section 18, Chapter 286 S.L.1941. That provision was amended by Chapter 121 S.L.1943, and the right was limited "to the former owner his executor or administrator or any member of his immediate family". This change emphasizes the continued intention of the legislature to grant this right of repurchase for the benefit of the former owner and his immediate family only. It is a right restricted to the special group named in the statute. It is a privilege which cannot be assigned to anyone outside of the group. It is a limited right which can be exercised by only those designated. It inures to no one else.

This court has repeatedly held that these provisions for the redemption or repurchase of property by the former owner are merely an additional privilege extended to the former owner. He is not thereby granted any vested interest in the property.

In Buman v. Sturn, 73 N.D. 561, 571, 16 N.W.2d 837, 842, Chief Justice Morris, speaking for this court said:

"That statute (Chapter 238 S.L. 1939) has no connection with or effect upon the vesting of title in the county. It confers an additional right (erroneously designated as a right of redemption) upon the former owner, making him a preferred purchaser without profit to the county. It is a special statute giving him a second chance as a special act of grace." See also Horab v. Williams County, 73 N.D. 754, 759, 19 N.W.2d 649; Stutsman v. Smith, 73 N.D. 664, 675, 18 N.W.2d 679; Coverston v. Grand Forks County, 74 N.D. 552, 23 N.W.2d 746; Blackford v. Judith Basin County, 109 Mont. 578, 98 P.2d 872, 126 A.L.R. 639; Yates v. Hawkins, 46 N.M. 249, 126 P.2d 476.

■ The title of the county to any tax forfeited land is not affected by this privilege given to the prior owner and his family. The county is only required to give a notice to them in case of the proposed, private sale of any interest therein. A lease given without that notice is subject to the right of the prior owner to repurchase. Such a lease is voidable by the prior owner or his family on repurchase according to the provisions of Section 57–2818 NDRC 1943.

That does not involve any implied repeal of Section 38–0911 NDRC 1943 which authorizes the county to make an oil and gas lease. It merely provides that before the county can give an effective lease on tax

forfeited lands the prior owner has to have notice so that he may repurchase if he desires. If he does not, the lease becomes effective. Thus any differences between Section 38–0911 and Sections 57–2818 and 57–2819 NDRC 1943 are reconciled and both acts harmonized. State v. Moses, 72 N.D. 142, 5 N.W.2d 303.

This construction of the laws also reconciles the policy of the legislature during the depression to encourage capital investments, in North Dakota, as pointed out by the amici curiae with its policy to encourage tax debtors to pay their taxes as to redeem or repurchase their tax forfeited real estate.

In the instant case George Parshall, the prior owner, did repurchase his tax forfeited land under the provisions of Sections 57–2818 and 57–2819 NDRC 1943. The county was thereupon empowered and required to convey to him "all real estate" that the county had obtained from him through the tax deed proceedings. Parshall, the prior owner and plaintiff's predecessor in title, thereby received the whole title which he had lost to the county. Such title must be quieted as against defendant's oil and gas lease upon the premises which by Parshall's repurchase became void.

The judgment of the district court is modified and the case remanded for entry of judgment in accordance herewith.

MORRIS, C. J., and BURKE, SATHRE and JOHNSON, JJ., concur.